[Civ. No. 14615. Fourth Dist., Div. One. Mar. 21, 1977.]

In re the Marriage of CELIA and LOREN HATCH COBB.
CELIA COBB, Respondent, v.
LOREN HATCH COBB, Appellant.

**COUNSEL**

Adrian D. Vining for Appellant.

Patricia H. Mason for Respondent.

**OPINION**

AULT, J.—Several years after her marriage to Loren Hatch Cobb had been dissolved, Celia Cobb filed an order to show cause in the dissolution proceeding in which she requested the court in the alternative to:

(1) award her $500 a month as a division of community property not disposed of at trial, i.e., as her community property interest in Loren's retirement pension from the United States Navy; *or*

(2) increase the spousal support payable to her from $1 a month to $500 a month.

The trial court denied her first request, ruling the retirement issue should have been litigated in 1970 at the time of the interlocutory hearing and hence was res judicata. However, the court increased the spousal support from $1 a month to $484.10 a month, a sum the court must have considered equal to exactly one-half of the community property interest in the pension.

Celia has not taken an appeal. Loren appeals from that portion of the order increasing the spousal support payable to Celia from $1 a month to $484.10 a month.

BACKGROUND

In 1970 Celia petitioned the court for the dissolution of her 22-year marriage to Loren and listed as community property subject to disposi-

tion 3 automobiles, savings bonds, furniture and a savings account. Loren's response added to the list only their house and certain life insurance policies. Although at the time of the dissolution Loren was on active duty in the United States Navy with more than 28 years of service, nothing in the record indicates the parties considered there might be a community property interest in his pension rights. In any event, the parties did not place that asset before the court for disposition.

On September 18, 1970, the parties entered into a stipulation in open court concerning the disposition of their community property. They agreed Loren should receive the bonds and the insurance policies and that Celia should receive one of the automobiles, the residence, the household furnishings and spousal support as follows: $400 a month for one year, $300 a month thereafter so long as Loren remained in active duty; after his retirement $150 a month for one year and $1 a month thereafter until the further order of the court. At the same hearing the court ordered entry of the interlocutory judgment of dissolution and incorporation of the oral stipulation in the judgment. No mention was made of Loren's pension rights in either the stipulation or the judgment.

On October 2, 1970, the court signed the interlocutory judgment approving the stipulation as fair, just and equitable and ordering the parties to comply with its terms. The court also signed a formal stipulated order setting forth the terms of the stipulation. On November 17, 1971, the final judgment of dissolution was entered, making final all the provisions of the interlocutory.

In December 1971 Celia first sought to increase her spousal support, realizing her access to Navy medical facilities had then been foreclosed. In support of her request, Celia declared her spousal support was barely enough to sustain her, let alone pay for medical care, and that she was uninsurable. She also said her medical problems left her unable to seek or obtain employment. She filed a November 1971 letter [a copy] from Dr. Schorn of Navy Hospital setting forth her many, serious medical problems and stating that she would be unable to support herself and would probably need prolonged medical treatment and even hospitalization in the future.

In opposition Loren declared Celia was receiving medical care under the auspices of the United States government at the time of the stipulated settlement and was aware that her right to such treatment would terminate upon entry of the final judgment of dissolution. He pointed out that the stipulation had been approved by the court and

incorporated in the interlocutory judgment and also disclosed that he had remarried and would retire from active duty at the end of the month.

On January 12, 1972, the court denied Celia's request for modification of her spousal support and on January 24 signed a formal order that the terms of the interlocutory and final judgments remain in effect. Celia did not appeal.

On February 1, 1972, after 30 years of active federal service, Loren retired from the Navy as a Lieutenant Commander and commenced receiving retired pay pursuant to 10 United States Code section 6326.

In 1975 Celia filed the order to show cause under consideration in which she requested the court to award her $500 a month, either as a division of the community interest in Loren's retirement pension not disposed of at trial, or as increased spousal support. Before the hearing she filed a letter from Dr. Moll dated August 1970 and refiled the same November 1971 letter from Dr. Schorn, describing her physical ailments at those times. In addition she filed one recent letter (dated Apr. 8, 1975) from Dr. Fitz, reporting that increasing degenerative arthritic changes had taken place since 1973 and predicting she would not be able to continue to work "for any lengthy time in the future." He concluded: "On the basis of that past and previous diagnosis, this patient will most probably have recurring medical problems which will require financial support for the future, over and above that of her orthopedic problems."

Celia's financial declaration disclosed her gross monthly income was $427 ($426 from working as a food handler and $1 from spousal support). Her deductions and monthly expenses left her with a deficit of $84 a month, even without providing for payment of medical bills. She had $500 in the bank but no other property.

Loren's financial declaration showed he was receiving $1,275.73 gross pension a month, was working as a real estate broker, and had, in addition to his insurance, a $12,000 interest in real property and over $1,400 on deposit in various financial institutions. However, after deductions, expenses and monthly payments on an automobile and travel trailer, he reported a deficit of $40.24 a month.

In its order, the trial court disposed of the retirement issue first. Although it found Loren, by virtue of 28 years of service in the Navy, had acquired vested retirement rights at the time of the dissolution, it ruled the parties had the opportunity to litigate the community property

interest in such rights at that time. Having failed to do so, it concluded the matter was res judicata and dismissed "petitioner's motion for a present determination and disposition of the community rights therein."[1]

Relative to Celia's alternate claim for increased spousal support, the court found: "That since the trial of the within matter on September 18, 1970, and the judicial consideration of petitioner's request for modification of spousal support on January 12, 1972, there have occurred sufficient changes of circumstance to warrant the Court's present consideration of petitioner's request for increase in spousal support, to-wit, the fact that the law concerning community property interests in military pension is now crystalized and the other evidence of petitioner's health and needs herein presented."

Accordingly, it ordered: "The Interlocutory Judgment of Dissolution of Marriage hereinbefore made and entered is modified as to spousal support only to provide as follows: Respondent is ordered to pay to petitioner as spousal support each month, a sum equal to 11.4/15% of the gross retirement pension received by respondent from the United States Government, which said sum at this time equals $484.10 per month."

## DISCUSSION

It is apparent from the language of the order itself that the trial court based its modification of spousal support to a substantial degree upon what it termed the "crystallization" of the law concerning community interests in military pensions. We deem this an improper consideration, and no authority has been cited to support the proposition that a change or clarification of the law concerning property rights qualifies as a change of circumstance which warrants a modification of spousal support.. ⬛ The change of circumstance which authorizes a court to modify a support order means a change in the circumstances of

---

[1]Since neither the pleadings nor the judgment in the dissolution action mention Loren's pension as a community asset, the court was without jurisdiction to consider the matter at a modification hearing. Property which is not mentioned in the pleadings as community property and which is left unadjudicated by a decree of divorce or dissolution is subject to future litigation, the parties being tenants in common meanwhile (*In re Marriage of Brown*, 15 Cal.3d 838, 850-851 [126 Cal.Rptr. 633, 544 P.2d 561]; *In re Marriage of Elkins*, 28 Cal.App.3d 899, 903 [105 Cal.Rptr. 59]; *Estate of Williams*, 36 Cal.2d 289, 292-293 [223 P.2d 248, 22 A.L.R.2d 716]). The property rights of tenants in common cannot be adjudicated in a motion or order to show cause, and can only be settled in an independent action. The trial court properly dismissed the part of the order to show cause requesting a division of Loren's pension, but its comment about res judicata should be disregarded, since the court lacked jurisdiction to modify its judgment with respect to property rights.

the respective parties, i.e., a reduction or increase in the husband's ability to pay and/or an increase or decrease in the wife's needs (see 6 Witkin, Summary of Cal. Law (8th ed. 1974) pp. 5047-5049). ■ The fact that Celia's community property interest in Loren's pension might have been discovered and asserted had the dissolution taken place in 1975 rather than in 1970 (because of development of the related law in the interval) is not a change of circumstance which authorized the court to order a modification of spousal support.

We are also satisfied from the record and the terms of the order that the trial court actually computed Celia's community interest in Loren's pension and then awarded her the exact amount of that interest ($484.10) as increased spousal support. Celia's moving papers showed that 22.8 years of Loren's 30 years of service in the Navy occurred during their marriage. Loren's response showed his monthly retirement pay to be $1,275.73. Thus the proper formula to determine Celia's community interest would be: $1/2 \times 22.8/30 \times \$1,275.73$. Correctly computed this would be $484.78, not the $484.10 stated in the order. The unique fraction used in the order (11.4/15) can only have had its origin in the miscalculation of a portion of the formula, i.e., $1/2 \times 22.8/30$. Instead of multiplying the fraction (22.8/30) by 1/2, the trial court obviously reduced it to 11.4/15 by dividing both the numerator and denominator by 2.

■ It has long been recognized that spousal support must be determined according to the needs of both parties and their respective abilities to meet those needs. (See e.g. *In re Marriage of Rosan,* 24 Cal.App.3d 885, 892 [101 Cal.Rptr. 295], relying on Civ. Code, § 4801, subd. (a) of the Family Law Act; *Marxer* v. *Marxer,* 185 Cal.App.2d 400, 404 [8 Cal.Rptr. 323], under the former divorce law.)

While the order under consideration states the modification and spousal support was in part based upon Celia's health and needs, it is apparent from what we have previously said that the trial court did not determine the amount ordered with these considerations, or with Loren's ability to pay, in mind.

Furthermore, Celia's showing that her needs had substantially changed since the court's 1972 order denying modification was, at best, meager. In any event, the showing of changed circumstances was insufficient to justify an increase in spousal support from $1 a month to $484.10 a month.

Although she now argues both the stipulated settlement in 1970 and the 1972 order were based on the assumption her physical condition would either improve or stabilize, she produced no evidence to that effect in the court below. The two letters which set forth her complaints most effectively described her condition before 1972, and the letter from Dr. Fitz did not show that her condition at the time of the most recent hearing was significantly worse. His prediction that she might not be able to continue to work in the future did not justify the increase. ■ A court is limited to considering the conditions existing at the time the modification is sought and may not provide for future contingencies which may or may not happen (*In re Marriage of Kuppinger,* 48 Cal.App.3d 628, 639 [120 Cal.Rptr. 654]; *Philbin* v. *Philbin,* 19 Cal.App.3d 115, 122 [96 Cal.Rptr. 408]).

■ Because the trial court's order increasing spousal support was based upon improper considerations and because the increase ordered was excessive under the evidence, the order must be reversed.

The order appealed from is reversed. The trial court is directed to reconsider the application for increased spousal support in accordance with the views expressed in this opinion. A substantial time has elapsed since the application was heard, and neither party should be precluded from producing additional evidence updating the factual matters which legitimately bear on the application. Celia's community interest in Loren's retirement pension, if any, should be litigated in an independent action.

Brown (Gerald), P. J., and Cologne, J., concurred.